# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

TANYA N. SVOBODA, *et al.*,      )
                            )
       Plaintiffs,        )
                            )      No. 21 C 5336
                            )
       v.                 )
                            )      Judge Jorge L. Alonso
AMAZON.COM, INC., *et al.*,     )
                            )
       Defendants.     )

## <u>MEMORANDUM OPINION AND ORDER</u>

For the reasons that follow, Plaintiff's Motion for Class Certification is granted.

## BACKGROUND

Plaintiffs filed an amended complaint, in which they assert two claims against

Defendants Amazon.com, Inc. and Amazon.com Services LLC (collectively, "Amazon" or

"Defendants").[1] They assert these claims on their own behalf and on behalf all individuals who

---

[1] The Court has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA"). Under CAFA, federal courts have jurisdiction over cases in which (1) the class consists of 100 or more members, see 28 U.S.C. § 1332(d)(5)(B); (2) any plaintiff is a citizen of a state different from that of any defendant, 28 U.S.C. § 1332(d)(2)(A); and (3) the aggregate amount of the plaintiffs' claims exceeds $5 million, exclusive of interest and costs. 28 U.S.C. §§ 1332(d)(2), (d)(6). "When a case is initially filed in state court and then removed to federal court, the time-of-filing rule means that we analyze our jurisdiction at the time of removal, as that is when the case first appears in federal court." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 427 (7th Cir. 2009) (citing *Wis. Dep't of Corrs. v. Schacht*, 524 U.S. 381, 391 (1998); *Tropp v. W–S Life Ins. Co.*, 381 F.3d 591, 595 (7th Cir. 2004)). Defendants have alleged, for purposes of removal, that there are "thousands if not millions" of class members (Notice of Removal ¶ 11, ECF No. 1) and that the amount in controversy exceeds $5,000,000.00 (*id.* ¶ 19). Plaintiff Svoboda is a citizen of Illinois (*id.* ¶ 13), Defendant Amazon.com, Inc. is a citizen of Delaware (its State of incorporation) and Washington (the location of its principal place of business) (*id.* ¶ 14), and Defendant Amazon.com, LLC is a citizen of Delaware (its State of incorporation) and Washington (the location of its principal place of business) (*id*). *See* 28 U.S.C. § 1332(d)(10) (Under CAFA, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized."). Thus, at

used a virtual try-on feature on Amazon's mobile website or app while in Illinois on or after
September 7, 2016. Excluded from the class are: (1) any person who used such a virtual try-on
feature only in model mode or for hair color; (2) any judge presiding over this action; (3) all
members of any such judge's staff and immediate family; (4) Defendants; (5) any entities in
which any Defendant has a controlling interest; (6) Defendant's employees, owners, officers, and
directors.[2]

In Count I, Plaintiffs assert a claim against Defendants for violation of the Illinois
Biometric Information Privacy Act ("BIPA") section 15(a), 740 ILCS 14/15(a) ("Section
15(a)"), and in Count II, Plaintiffs assert a claim against Defendants for violation of BIPA
section 15(b), 740 ILCS 14/15(b) ("Section 15(b)"). Section 15(a) of BIPA requires private
entities in possession of biometric identifiers or biometric information to develop and comply
with a written policy, made available to the public, that establishes a retention schedule and
guidelines for permanently destroying biometric identifiers and biometric information. Section
15(b) prohibits private entities from collecting, capturing, purchasing, receiving through trade, or
otherwise obtaining a person's biometric identifier or biometric information unless they first: (1)
inform the person in writing that biometric identifiers or information will be collected or stored;
(2) inform the person of the specific purpose and length of term for which such biometric

---

least one plaintiff is "a citizen of a State different from any defendant." 28 U.S.C. §
1332(d)(2)(A).

[2] The class definition alleged in Plaintiffs' amended complaint differs slightly: "All individuals
who, while residing in the State of Illinois, had their biometric identifiers or biometric
information collected, captured, received or otherwise obtained by Amazon in connection with
the use of any virtual try-on feature on any Amazon website or platform." (Am. Compl. ¶ 65.) A
class definition may be revised, for example to avoid being over-inclusive or fail-safe, rather
than "flatly denying class certification on that basis." *See, e.g.*, *Messner v. Northshore Univ.
HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012).

identifiers or information is being collected, stored, and used; and (3) receive a written release signed by the person.

"Biometric identifier" is defined as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10. Excluded from the definition is, among other things, "information captured from a patient in a health care setting or information collected, used, or stored for health care treatment, payment, or operations under the federal Health Insurance Portability and Accountability Act of 1996." *Id*. "Biometric information" is defined as "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id*. Plaintiffs refer to biometric identifiers and biometric information together as "Biometrics." (Am. Compl. ¶ 1.)

Plaintiffs allege that Amazon violated these requirements by collecting, capturing, storing, or otherwise obtaining the facial geometry and associated personal identifying information of thousands if not millions of Illinois residents who used Amazon's virtual "Try-On" programs and applications (the "VTO") from computers and other devices in Illinois without first providing notice and the required information, obtaining informed written consent, or creating written publicly-available data retention and destruction guidelines. (*Id*. ¶ 4.) Plaintiffs seek to prevent Amazon from further violating the privacy rights of Illinois residents and to recover statutory damages for the alleged BIPA violations. (*Id*. ¶ 5.)

Plaintiffs seek statutory damages of $5,000 for each intentional or reckless violation of BIPA pursuant to 740 ILCS 14/20(2), or alternatively, statutory damages of $1,000 for each negligent violation pursuant to 740 ILCS 14/20(1); injunctive and other equitable relief, including requiring Defendants to comply with BIPA's requirements for the collection, storage,

and use of Biometrics; reasonable attorneys' fees and costs pursuant to 740 ILCS 14/20(3); and pre- and post-judgment interest. (*Id*. at Prayer for Relief.)

Plaintiffs have filed a Motion for Class Certification ("Motion") along with deposition transcripts, declarations, and other documents gotten through discovery in this case. Amazon opposes Plaintiffs' Motion ("Opposition"), and, like Plaintiffs, submits in support of its Opposition deposition transcripts, declarations, and other documents gotten through discovery. The following facts are undisputed unless otherwise noted.

Amazon sells products to consumers on its mobile website ("mWeb") and shopping app ("mShop" or "App"). VTO is exclusively available on mobile devices. Using these platforms, the VTOs can be used to virtually try on makeup and eyewear. The VTOs are software programs that use augmented reality to overlay makeup and eyewear products on an image or video of a face, allowing the shopper to see what the product might look like on them before deciding to purchase it. One of the VTOs at issue was developed by ModiFace, Inc. and customized for Amazon (the "ModiFace VTO"). The other VTO at issue was developed by Amazon in-house (the "Amazon VTO"), which replaced the ModiFace VTO for portions of the class period.

At a high level, the VTO processes work the same for every user. For all of the VTOs, the user begins by clicking a "try on" (or similar) button on an Amazon product page. The use of VTO technology is optional, and customers who do not wish to use VTO for eligible products can still purchase those products. The first time a customer uses the Amazon VTO, she is shown a pop-up screen that states, "Amazon uses your camera to virtually place products such as sunglasses and lipstick on your face using Augmented Reality. All information remains on your device and is not otherwise stored, processed or shared by Amazon." The customer can click the blue-text hyperlink on the screen, "permissions settings," to "manage this access at any time." If

the customer clicks "Allow this Amazon app to access your camera and skip this step in the future," and "Allow access," she will be prompted to give permission for the Amazon VTO to use the camera on her device. Customers are likewise asked to give permission for Amazon to use their cameras the first time they use the ModiFace VTO. Only after granting this permission may the customer use VTO technology to virtually "try on" a product. Users may select live mode or photo upload mode to superimpose the try-on product on an image of their own face. Or they may select model mode to see the product on a model's face. For live mode and photo upload mode, all of the VTOs use software to detect the users' facial features and use that facial data in order to determine where to overlay the virtual products.

Amazon submits evidence as to how the two VTOs differ in operation. The Amazon VTO comes in two forms; beauty VTO technology is available for certain full-coverage lip products, including lip gloss, lip stain, and lipstick, while eyewear VTO technology is available for glasses. The VTOs use different processes when used for lip products as compared to eye products to identify and superimpose images over the relevant part of the user's face. For beauty, the user's device detects approximately 20 two-dimensional landmarks for the boundaries of the lip region. When a customer activates Amazon's VTO, the user's device detects the outline of the user's lips and then the VTO technology sends information about the product, such as shade and gloss level, to the user's device, which renders the virtual product onto the lip. For eyewear, the user's device detects landmarks of the eyes and nose region when a customer wants to virtually try on a pair of glasses, to superimpose the image of glasses in the correct location.

The ModiFace VTO is available for lip liner, eye shadow, eye liner, and hair color. The exact processes used by the ModiFace VTO to facilitate "try-on" are ModiFace's intellectual property, and Amazon only licenses the ModiFace VTO.

5

Plaintiff Svoboda testified that she used VTO while shopping for lipstick on Amazon's mobile website in 2020. At that time she was living in Illinois. She testified that she elected to use photo upload mode to virtually try on various shades. She did not purchase anything after using VTO. ModiFace VTO Feature records usage only when the user adds a product to a virtual cart. According to the usage data, the only records of Plaintiff Svoboda using the ModiFace VTO reflect her use in model mode, rather than a use where the product was applied to her face.

Plaintiff Colosi testified that she used a VTO feature while shopping for lipstick, eye liner, and eye shadow in 2019, 2020, 2021, and March 2022. At that time she was living in Illinois. Colosi's sole recorded use of the ModiFace VTO from an Illinois-associated IP address was in model mode, which applies products to a model's face, rather than the user's face. No Amazon records reflect Plaintiff Colosi ever using the Amazon VTO in Illinois.

Neither named Plaintiff alleges they used VTO technology to try on eyewear. Although Colosi alleges that she used the VTO feature when shopping for eye liner and eye shadow, records reflect that these uses were in the ModiFace VTO's model mode.

Discovery to date establishes there are at least 163,738 persons who used a VTO on Amazon's platforms while in Illinois during the class period. Amazon submits the data available for determining a customer's location at the time they used either VTO. First, each Amazon account has a registered billing address that corresponds to the primary card associated with that account.

Second, VTO usage data maintained by Amazon includes information pertaining to the Internet Protocol ("IP") address associated with a given VTO use. Generally, an IP address is an identifier assigned by internet providers to devices connected to the internet. These assignments have regional indicators and may correlate with geography; however, they do not follow state

lines or otherwise conform precisely with states, cities, counties, or other geographic labels. Amazon's VTO records data field include "country_code" and "country_code_state." Amazon submits that these indicators are "best guesses" of a users' location based on available IP information and are not conclusive records of where VTO was used. MaxMind, the third-party service provider that informs Amazon's geolocation coding, states that its product is 74% accurate for identifying whether an IP is within 100 km of a given U.S. city. Similarly, ModiFace data includes "geo_IP-country_code" and "geo_IP_state_code." Where ModiFace's systems have less than 85% confidence in the users' state, this field returns the result "untrusted_state" or "unknown_state."

## DISCUSSION

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). "A class action may be maintained if Rule 23(a) is satisfied and" if the case falls within at least one of the categories outlined in Rule 23(b). Fed. R. Civ. P. 23(b); *see also Wal-Mart*, 564 U.S. at 345. Rule 23(a) allows "[o]ne or more members of a class" to "sue or be sued as representative parties on behalf of all class members only if:"

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Rule 23(b)(3) allows class certification where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(c)(1)(A) requires that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A).

To support a motion for class certification, a "party seeking class certification must affirmatively demonstrate [her] compliance with the Rule—that is, [s]he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart*, 564 U.S. at 350. Thus, the "party seeking certification bears the burden of demonstrating that certification is proper by a preponderance of the evidence." *Chi. Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chi.*, 797 F.3d 426, 433 (7th Cir 2015). A court considering a motion for class certification must engage in "a rigorous analysis" that "will frequently" overlap with the merits, because the considerations "are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33-34 (2013) (citations omitted).

Plaintiffs seek to certify a Class of all individuals who used a virtual try-on feature on Amazon's mobile website or app while in Illinois on or after September 7, 2016. Excluded from the Class are: (1) any person who used such a virtual try-on feature only in model mode or for hair color; (2) any judge presiding over this action; (3) all members of any such judge's staff and immediate family; (4) Defendants; (5) any entities in which any Defendant has a controlling interest; (6) Defendant's employees, owners, officers, and directors.

8

### 1. Numerosity

"The crux of the numerosity requirement is not the number of interested persons per se, but the practicality of their joinder into a single suit." *Arenson v. Whitehall Convalescent & Nursing Home, Inc.*, 164 F.R.D. 659, 663 (N.D. Ill. 1996). Here, Plaintiffs allege that there are "thousands if not millions" of class members (Am. Compl. ¶ 4) and state in briefing that discovery to date establishes there are over 160,000 persons who used a VTO on Amazon's platforms while in Illinois during the class period. (Mot. 5.) Defendants do not contest numerosity. Accordingly, the Court concludes that joinder would be impracticable and the numerosity requirement is met.

### 2. Adequacy, Standing, and Typicality

Rule 23(a)'s requirement that "the representative parties will fairly and adequately protect the interests of the class," has two components: the adequacy of the named plaintiffs and the adequacy of proposed class counsel. *See Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011) (citations omitted).

The Court begins with the second issue first. Proposed class counsel are Keith James Keogh, Theodore Herbert Kuyper, and Timothy J. Sostrin, of Keogh Law, Ltd. Their adequacy has not been challenged.

Before appointing class counsel, Rule 23(g) requires that the court consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and
>
> (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). Additionally, "[c]lass counsel must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4).

Plaintiffs' proposed class counsel submit that they have extensive experience in complex litigation and consumer class actions involving statutory privacy claims such as BIPA, and they have been appointed class counsel in scores of cases arising under various consumer protection statutes including BIPA. (Mot. Ex. 12 at ¶¶ 6–48.) Plaintiffs' proposed class counsel further state that they have vigorously pursued the class's claims from the outset, from investigating the claims and drafting and filing several well-pled complaints, to briefing and defeating Amazon's motions to dismiss, engaging in other contested motion practice, and taking extensive written and oral merits and class discovery (in the U.S. and Canada) to develop the facts necessary for class certification and trial, including retaining and consulting with both consulting and testifying experts. (*Id.* ¶¶ 2–3.) Proposed class counsel state that they are ready and able to prosecute this case to complete. Accordingly, the Court finds that Plaintiffs' proposed class counsel are adequate.

Further, for the reasons set forth below, the Court certifies Plaintiffs' proposed class. "[A] court that certifies a class must appoint class counsel" and, in doing so, must consider the factors set forth in Rule 23(g)(1)(A). *See supra*. The Court is satisfied the requirements of Rule 23(g) are met and appoints Keith James Keogh, Theodore Herbert Kuyper, and Timonthy J. Sostrin, of Keogh Law, Ltd. as class counsel in this case.

Next the Court considers the adequacy of the named Plaintiffs. This requirement "is satisfied where the named representative (1) has retained competent counsel, (2) has a sufficient interest in the outcome of the case to ensure vigorous advocacy, and (3) does not have interests antagonistic to those of the class." *Fournigault v. Indep. One Mortg. Corp.*, 234 F.R.D. 641, 646

(N.D. Ill. 2006). The first element—competent counsel—is satisfied for the reasons set forth above.

Amazon argues that the named Plaintiffs are inadequate and atypical because they allege they used the VTO for lipstick, not eyewear or eye makeup, but the majority of the proposed class is comprised of individuals who used the VTO for eyewear. Amazon argues that the VTO technology for lipstick versus eyewear have factual dissimilarities that may require different outcomes as to each use type and are subject to different defenses, and so individuals who used VTO for eyewear or eye makeup should be severed from Plaintiffs' proposed class. The Court considers each of Amazon's specific arguments on these points in turn.

First Amazon argues that a critical factual question is whether either VTO for eyewear or VTO for lipstick uses information that is "biometric." Because the named Plaintiffs do not claim that their ocular biometrics were collected, Amazon argues that they have no stake in the outcome for such users, and therefore lack standing to sue regarding eyewear or eye makeup.

Article III limits federal court jurisdiction to cases or controversies in which the plaintiff has suffered an injury-in-fact. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *see also Payton v. Cnty. of Kane*, 308 F.3d 673, 682 (7th Cir. 2002) ("[I]t bears repeating that a person cannot predicate standing on injury which he does not share. Standing cannot be acquired through the back door of a class action."). Plaintiffs contend that the named Plaintiffs have standing because they have suffered the same type of injury as every other class member: invasion of their biometric privacy rights through their use of the VTO technology on Amazon's mobile website or app. Named Plaintiffs also seek the same type of recovery as everyone in the class: statutory damages under BIPA. *See Tapia-Rendon v. United Tape & Finishing Co.*, No. 21 C 3400, 2023 WL 5228178, at *4 (N.D. Ill. Aug. 15, 2023) (finding named plaintiff that alleged

a similar type of injury (violation of BIPA) and type of recovery (statutory damages) possessed

"'the same interest and suffer[ed] the same injury as the class members'" (citing *Amchem Prods.,*

*Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997))), *reconsideration denied,* No. 21 C 3400, 2024

WL 406513 (N.D. Ill. Feb. 2, 2024). Indeed, Amazon does not explain how mapping the user's

mouth versus eyes and nose might be materially different for determining whether the

information is "biometric," when each VTO uses the same augmented reality process to map

facial landmarks. *See* 740 ILCS 14/10 ("'Biometric identifier' means a retina or iris scan,

fingerprint, voiceprint, or scan of hand *or face geometry*." (emphasis added)).

Second, Amazon challenges the adequacy of the named Plaintiffs on the basis that they

have no incentive to contest the defense—specific to the users of VTO for eyewear—that BIPA's

healthcare exception bars claims arising from the virtual try-on of eyewear. *See* 740 ILCS 14/10

("Biometric identifiers do not include information captured from a patient in a health care setting

or information collected, used, or stored for health care treatment[.]"). Amazon points to three

district court cases holding that BIPA's healthcare exception exempts BIPA claims based on

virtual try-on for glasses. *Warmack-Stillwell v. Christian Dior, Inc.*, 655 F. Supp. 3d 742, 747

(N.D. Ill. 2023); *Svoboda v. Frames for Am., Inc.*, No. 21 C 5509, 2022 WL 4109719, at *2

(N.D. Ill. Sept. 8, 2022), *appeal dismissed,* No. 22-2781, 2023 WL 6836997 (7th Cir. Apr. 5,

2023); *Vo v. VSP Retail Dev. Holding, Inc.*, No. 19 C 7187, 2020 WL 1445605, at *2 (N.D. Ill.

Mar. 25, 2020).

It is true that "[t]he presence of even an arguable defense peculiar to the named plaintiff

or a small subset of the plaintiff class may destroy the required typicality of the class as well as

bring into question the adequacy of the named plaintiff's representation." *CE Design Ltd. v. King*

*Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011) (quoting *J.H. Cohn & Co. v. Am.*

*Appraisal Assocs., Inc.*, 628 F.2d 994, 999 (7th Cir. 1980) (internal quotation marks omitted));

*see also Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1027 (7th Cir. 2018) ("A representative

might be inadequate if he is subject to a substantial defense unique to him."). In that scenario,

"[t]he fear is that the named plaintiff will become distracted by the presence of a possible

defense applicable only to him so that the representation of the rest of the class will suffer." *CE

Design*, 637 F.3d at 726 (citations and internal quotation marks omitted). There is no such fear

here, where the named Plaintiffs have not alleged that they used the VTO to "try on" eyewear

and so would not be subject to the general health care exemption defense.

More generally, "[c]lass representatives must not have interests antagonistic to the class

because they may interfere with the vigorous prosecution of the action." 1 McLaughlin on Class

Actions § 4:30 (20th ed.) (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856–57 (1999);

*Amchem*, 521 U.S. at 625–26 (1997)); *see also Amchem*, 521 U.S. at 625 ("The adequacy inquiry

under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class

they seek to represent."); *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) ("A class is

not fairly and adequately represented if class members have antagonistic or conflicting claims."

(citation omitted)). However, "the mere possibility that a trivial level of intra-class conflict may

materialize as the litigation progresses [does not] foreclose[] class certification entirely." *Abbott

v. Lockheed Martin Corp.*, 725 F.3d 803, 813 (7th Cir. 2013). The following treatise excerpt

sheds light on when conflicts render the proposed class representative inadequate:

> The linchpin of adequate represen[t]ation is alignment of interests and incentives
> between the representative plaintiffs and absent class members. Conflicts are
> readily identified when class members' interests directly oppose those of the
> proposed representative. A conflict concerning the allocation of relief or remedies
> among class members with competing interests can be fundamental and render a
> representative plaintiff inadequate. The interests of class members in a class action
> recovery always differ to some extent because of their varying participation or the
> utility of the consideration to each. This inevitable variation among class members

13

does not automatically preclude a determination that a particular representative can adequately represent the interests of all class members.

1 McLaughlin on Class Actions § 4:30 (20th ed.).

Here, there is no indication that the named Plaintiffs' interests are antagonistic to, or directly conflict with, those members of the class who used VTO to "try on" eyewear. Rather, Amazon's concern is that Plaintiffs lack the incentive to vigorously contest the healthcare exception defense which, at this point, is merely speculative. *See Breedlove v. Tele-Trip Co. Inc.*, No. 91 C 5702, 1993 WL 284327, at *7 (N.D. Ill. July 27, 1993) ("[C]lass certification should not be denied by speculative suggestions of potential conflicts." (citing *Rosario*, 963 F.2d at 1018–19)).

For all of these reasons, the Court is persuaded that the named Plaintiffs have suffered the same alleged injury as the class members and have a sufficient interest in the outcome of the case—including for those who used VTO for eyewear—to ensure vigorous advocacy. Accordingly, Plaintiffs have standing to bring their claims and are adequate class representatives. Rule 23(a)'s adequacy requirement is therefore met.

Finally, the Court considers typicality. Although Amazon proclaims that the named Plaintiffs are atypical for the same reasons they are inadequate, Amazon does not separately address the typicality analysis. "In many cases . . . the requirement of typicality merges with the further requirement that the class representative 'will fairly and adequately protect the interests of the class.'" *CE Design Ltd.*, 637 F.3d at 724 (citing Fed. R. Civ. P. 23(a)(4)). That said, adequacy is the proper rubric for considering particularized defenses. *Id*. at 725; *see supra*. Typicality under Rule 23(a)(3) should instead "be determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members[.]" *CE Design Ltd.*, 637 F.3d at 725 (citation and internal quotation marks omitted).

Typicality is satisfied when a plaintiff's claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and is based on the same legal theory." *Rosario*, 963 F.2d at 1018. "The individual claims may feature some factual variations as long as they 'have the same essential characteristics.'" *Beaton*, 907 F.3d at 1026 (quoting *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006)).

The named Plaintiffs' claims arise from the same course of conduct that gives rise to other class members' claims (Amazon purportedly collecting, capturing, possessing, and using their facial templates via its VTOs) and are based on the same legal theory (violation of BIPA Sections 15(a) and (b)). Accordingly, the named Plaintiffs' claims are typical of the claims of the class.

### 3. Commonality

Next, to be suitable for class action treatment, a case must involve questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). The Supreme Court has described what makes an issue common:

> Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury. This does not mean merely that they have all suffered a violation of the same provision of law. . . . Their claims must depend upon a common contention[.] . . . That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

*Wal-Mart*, 564 U.S. at 349–50 (internal punctuation and citations omitted). In describing the difference between common and individual questions, the Supreme Court has explained:

> An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation omitted). "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014).

Plaintiffs' and the class's BIPA claims depend upon the same contention and alleged unlawful course of conduct: Amazon's use of scans of face geometry and face templates through VTOs without first making disclosures, obtaining signed written consent, and developing a publicly available written biometric data retention and destruction policy. The following common questions are central to their claims:

1) Whether the face-related data used by Amazon's VTOs constitute biometric identifiers or biometric information under BIPA, 740 ILCS 14/10;

2) If so, whether the VTOs' use of the face-related data means that Amazon collected, captured, obtained, or possessed biometric identifiers and biometric information within the meaning of 750 ILCS 14/15;

3) If so, whether Amazon disclosed to VTO users in writing the information specified in 740 ILCS 14/15(b)(1)–(2);

4) Whether Amazon obtained written releases signed by Plaintiffs and the class members, 740 ILCS 14/15(b)(3);

5) Whether Amazon developed a publicly available written policy governing retention and permanent destruction of biometric data related to the VTOs, 740 ILCS 14/15(a); and

6) Whether Amazon's alleged BIPA violations were negligent, intentional, or reckless, 740 ILCS 14/20(1)–(2).

16

The putative class plainly share common factual questions about the functionality of the Amazon and Modiface VTO software and Amazon's use of the class members' facial geometry data as well as legal questions about whether that use violated BIPA. Answering these questions will resolve issues that are central to the validity of each one of the claims in one stroke, and so the Court finds that the commonality requirement is met. *See Rogers v. BNSF Ry. Co.*, No. 19 C 3083, 2022 WL 854348, at *3 (N.D. Ill. Mar. 22, 2022) ("As discussed earlier regarding commonality, the questions of law and fact underlying the class members' BIPA claims are essentially identical and will be premised on common proof."); *In re Facebook Biometric Info. Privacy Litig.*, 326 F.R.D. 535, 545 (N.D. Cal. 2018) ("[T]here is no doubt that a template-based class poses common legal and factual questions, namely: did [the defendant]'s . . . technology [at issue] harvest biometric identifiers as contemplated under BIPA, and if so, did [the defendant] give users prior notice of these practices and obtain their consent?"), *aff'd sub nom. Patel v. Facebook, Inc.*, 932 F.3d 1264, 1276 (9th Cir. 2019); *see also Bayeg v. The Admiral at the Lake*, No. 19 CH 8828 (Cir. Ct. Cook Cnty., May 25, 2023) (Mot. Ex. 3) (certifying contested BIPA class); *Palacios v. H&M Hennes & Mauritz, LP*, No. 18 CH 16030 (Cir. Ct. Cook Cnty., Mar. 16, 2023) (Mot. Ex. 2) (certifying class of people who used time clock at issue); *Morris v. Wow Bao, LLC, et al.*, No. 17-L-12029 (Cir. Ct. Cook Cnty., Dec. 14, 2021) (Mot. Ex. 1) (certifying BIPA class of customers who used a facial recognition kiosk at issue).

### 4. Predominance and Superiority

A Rule 23(b)(3) class action may be certified only if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently

adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In making this inquiry, a court should

consider the following factors:

> (A) the class members' interests in individually controlling the prosecution or
> defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already
> begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in
> the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed R. Civ. P. 23(b)(3)(A)–(D).

With respect to predominance, the "inquiry tests whether proposed classes are

sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Rule

23(b)(3)'s "predominance criterion is far more demanding" than "Rule 23(a)'s commonality

requirement[,]" *id*. at 623–34, and "is satisfied when 'common questions represent a significant

aspect of a case and can be resolved for all members of a class in a single adjudication.'"

*Messner*, 669 F.3d at 815 (cleaned up) (citing 7AA Wright & Miller, Federal Practice and

Procedure § 1778 (3d ed. 2011)). The analysis "begins, of course, with the elements of the

underlying cause of action." *Id*. (internal quotation marks omitted) (quoting *Erica P. John Fund,

Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011)). "If, to make a prima facie showing on a given

question, the members of a proposed class will need to present evidence that varies from member

to member, then it is an individual question." *Id*. (quoting *Blades v. Monsanto Co.*, 400 F.3d 562,

566 (8th Cir. 2005)). But the presence of individual issues does not necessarily destroy

predominance. *Id*. ("Individual questions need not be absent. The text of Rule 23(b)(3) itself

contemplates that such individual questions will be present.").

As for the superiority requirement, it demands that a class action be the superior way to

"fairly and efficiently" adjudicate the dispute. Fed. R. Civ. P. 23(b)(3). While they are distinct

inquiries, the predominance and superiority analyses can overlap, which Amazon contends is the circumstance here. When considering superiority, courts must weigh "both the costs *and benefits* of the class device" and "assess efficiency with an eye toward 'other available methods.'" *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 663–64 (7th Cir. 2015) (emphasis original).

Plaintiffs make the compelling argument that their and the class members' claims that Amazon violated Sections 15(a) and (b) hinge entirely on the common questions identified above, all of which can be resolved through class-wide evidence and therefore predominate any individual issues. *See Golon v. Ohio Sav. Bank*, No. 98 C 7430, 1999 WL 965593, at *4 (N.D. Ill. Oct. 15, 1999) ("[T]he predominance standard is met when there exists generalized evidence that proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position." (cleaned up) (citation omitted)); *see also Rogers*, 2022 WL 854348, at *3 (finding predominance satisfied because "the questions of law and fact underlying the class members' BIPA claims are essentially identical and will be premised on common proof. Specifically, the common issue of demonstrating BNSF operated the [technology at issue] and collected biometric information in violation of BIPA will predominate over any potential individualized issues."); *In re Facebook Biometric Info. Priv. Litig.*, 326 F.R.D. at 545–48. More specifically, Plaintiffs argue that the questions posed by the Section 15(b) claim can be resolved for the class as a whole by evidence regarding the type of face-related data used by Amazon's VTOs, which are software that Plaintiffs submit evidence to show works (at least at a high level) the same for everyone in the class, as well as evidence that Amazon uniformly made no BIPA-compliant disclosures to, and obtained no written releases from, any of its VTO users. As for the Section 15(a) claim, the questions of whether Amazon possessed the face-related data and developed a publicly available written biometric data

retention and destruction policy applicable to the VTOs can be resolved by common evidence regarding the VTO functions and Amazon's written policies or lack thereof.

Defendants raises several concerns that they claim defeat predominance and superiority, each of which the Court considers and finds uncompelling.

### i. Manageability

Amazon argues that individual inquiries required to identify class members and the scope of their claims render the proposed class unmanageable. It posits that individualized inquiries would present enormous managerial challenges, impose a staggering burden on the parties and the Court, and overwhelm any efficiencies derived from resolving issues common to the class.

The Court first addresses Amazon's geographic concerns. Amazon argues that the proposed class is limited to persons who used VTO while in Illinois, who are challenging to identify because VTO is available exclusively on mobile devices and so its users will engage with it on-the-go. Although Amazon stores users' IP addresses (which Plaintiffs contend can be used to confirm whether the VTO occurred in Illinois), an IP address does not reflect the location of the end user; rather, it reflects the location of a data center controlled by the user's internet-service provider, which generally is within the same geographic area as the user but may not necessarily be in the same state. Amazon contends that IP addresses are unreliable geo-locators here for additional reasons, including that VTO is often used through cellular data rather than a Wi-Fi connection, which is less geographically reliable than broadband service; with respect to ModiFace specifically, its IP tool codes the location of all cellular-connected usage as "untrusted;" to protect user privacy, Amazon does not record the last digit in an IP address (which Plaintiffs contest), meaning the available portion of the IP resolves to a network, rather than a specific device; and many individuals use VPNs to mask their IP address for privacy or

data security, in which event a geolocation tool would resolve to a false location selected by the VPN.

In *In re Facebook Biometric Info. Priv. Litig.*, the district court certified a class of "Facebook users located in Illinois for whom Facebook created and stored a face template after June 7, 2011." 326 F.R.D. at 540. The court considered Facebook's objections to commonality and predominance based on extraterritoriality concerns because its servers were not located in Illinois. The court found, "[t]here is no genuine dispute that this case is deeply rooted in Illinois. The named plaintiffs are located in Illinois along with all of the proposed class members, and the claims are based on the application of Illinois law to use of Facebook mainly in Illinois." *Id*. at 547.

Plaintiffs contend that Illinois billing addresses, IP addresses from which the VTO was used, and geo-location data identifying the region of the user based on the IP address will identify persons who used the VTOs while in Illinois, and claim-form affidavits can serve as an additional cross-check. The Court agrees.[3] The Court has the discretion to consider class member affidavits or "creative solutions to the administrative burdens of the class device." *Mullins*, 795 F.3d at 669, 672; *Beaton*, 907 F.3d at 1030 ("The district court recognized that individualized inquiries could be handled through 'streamlined mechanisms' such as affidavits and proper auditing procedures. We agree. Defendants' due process rights are not harmed by such case-management tools."). The majority of ModiFace VTO and Amazon beauty VTO records with an Illinois billing address also have an Illinois IP address according to Amazon's geo-locator data, which Plaintiffs contend corroborate the reliability of the records. The Court does not share

---

[3] For this reason, the Court declines to resolve Plaintiffs' alternative argument regarding judicial estoppel.

Amazon's concerns that identifying class members who used VTO in Illinois renders the class unmanageable. *Cf. In re Facebook Biometric Info. Priv. Litig.*, 326 F.R.D. at 547 ("Facebook has not tendered any evidence to indicate that the circumstances relating to the challenged conduct did not occur 'primarily and substantially within' Illinois. Class members do not need to show more in order to sue under BIPA, particularly in light of BIPA's express concerns about data collection by 'major national corporations.'" (cleaned up) (citations omitted)). When considering manageability concerns about class member identification, "a district judge has discretion to (and . . . normally should) wait and see how serious the problem may turn out to be after settlement or judgment, when much more may be known about available records, response rates, and other relevant factors. And if a problem is truly insoluble, the court may decertify the class at a later stage of the litigation." *Mullins*, 795 F.3d at 664. "[R]efusing to certify on manageability grounds alone should be the last resort." *Id.*

Next, although the named Plaintiffs testified that they used VTO while they lived in Illinois, Amazon contends that its data does not reflect that either ever used Amazon's VTO while in Illinois. Amazon argues that this means either the IP addresses are unreliable for determining the location of use or the named Plaintiffs are inadequate class representatives who lack standing to bring claims pertaining to the Amazon VTO. Plaintiffs, on the other hand, argue that every data production prior to the last one included records of Plaintiff Colosi using the Amazon VTO. Further, both named Plaintiffs testified that they were living in Illinois at the time they used the VTO, which is sufficient evidence at this stage to show standing. *Cf. Mullins*, 795 F.3d at 669 ("Given the significant harm caused by immunizing corporate misconduct, we believe a district judge has discretion to allow class members to identify themselves with their own testimony and to establish mechanisms to test those affidavits as needed.").

22

Amazon next argues that class members cannot be identified with class-wide data, and the proposed class is simultaneously over- and under-inclusive, for the following reasons:

- Amazon's records show which accounts, not individuals, engaged with VTO, and Amazon accounts are often shared among family and friends through either discrete user profiles or password sharing;

- Because VTO can only be used on mobile devices, multiple people may pass a phone and take turns trying on a product or children may play with VTO using a parent's phone;

- Shoppers can use VTO while not logged in to an account, in which case the records do not provide account information for that use; and

- Data from the ModiFace VTO specifically only records VTO uses when the shopper adds the product to their virtual cart, meaning class members could allege violations that are not corroborated in the data.

Amazon contends that its records cannot resolve these discrepancies on a class-wide basis and so there will have to be an individualized inquiry into who used the VTO and whether that use occurred in Illinois, particularly because each use could potentially give rise to an additional $5,000 in liability, and so individualized actions are the superior method of adjudication.

As set forth above, Plaintiffs' vision for identifying class members will result in the identification of people who used VTO in Illinois during the class period. Plaintiffs do not need to identify every member of the class at the certification stage. *See Mullins*, 795 F.3d at 665 ("Due process simply does not require the ability to identify all members of the class at the certification stage.").

Further, Amazon's concerns regarding passing the phone are too speculative to be a basis for denying certification. *Toney v. Quality Res., Inc.*, 323 F.R.D. 567, 587 (N.D. Ill. 2018) ("[A]llowing such speculation to dictate the outcome of a class-certification decision would afford litigants in future cases 'wide latitude to inject frivolous issues to bolster or undermine a finding of predominance.'" (citation omitted)); *Heard v. Becton, Dickinson & Co.*, 524 F. Supp. 3d 831, 850 (N.D. Ill. 2021) ("[W]ithout 'specific evidence—as opposed to mere speculation—that [a] purportedly individualized issue predominates over common issues,' the court cannot conclude that individualized factual questions predominate." (quoting *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 298 (N.D. Ill. 2014))).

Amazon's over-inclusivity concern does not merit a different result. The Seventh Circuit has cautioned against refusing to certify on the basis that the there may be fraudulent or inaccurate claims. *Mullins*, 795 F.3d at 668. ("By 'focusing on making absolutely certain that compensation is distributed only to those individuals who were actually harmed,' the heightened ascertainability requirement 'has ignored an equally important policy objective of class actions: deterring and punishing corporate wrongdoing.'"). And Plaintiffs are correct in pointing out that the class definition is not tied to whether Amazon has a record of use. For this reason, *Espejo v. Santander Consumer USA, Inc.*, is distinguishable. No. 11 C 8987, 2016 WL 6037625, at *12 (N.D. Ill. Oct. 14, 2016) (proposed class could not be ascertained where plaintiffs themselves challenged the content, clarity, accuracy, and completeness of the records on the very points needed to determine class membership, it would require a liability determination to determine membership, and plaintiffs failed to identify any group of members who fell within it). As discussed above, Illinois billing addresses, IP addresses, and geo-location data will identify

persons who used the VTOs while in Illinois, and claim-form affidavits can serve as an additional cross-check.

ii.    **Affirmative Defenses and Individual Damages**

Next Amazon argues that it has unique defenses to every member of the putative class because damages are "discretionary rather than mandatory" under BIPA, citing *Cothron v. White Castle Sys., Inc.*, 216 N.E.3d 918, 929, *as modified on denial of reh'g* (July 18, 2023). In particular, Amazon points out that the voluntary nature of Amazon's VTO gives rise to affirmative defenses such as consent, failure to mitigate, estoppel, and waiver, which can vary depending on the conduct of each individual class member and which may affect the availability discretionary damages. Amazon contends that due process requires that Amazon be given an opportunity to present its defenses to each claim for statutory damages, and that the analysis is inherently individualized and would overwhelm common questions and undermine the efficiencies of the class device. The Court disagrees.

*Cothron* held that a separate BIPA claim accrues "with every scan" of biometric data before the defendant obtains the informed written consent required by BIPA, *id.*, and rejected the argument that a different result was warranted because "class-wide damages . . . may exceed $17 billion," reasoning "this court has repeatedly held that, where statutory language is clear, it must be given effect, even though the consequences may be harsh, unjust, absurd or unwise." *Id*. at 928 (internal quotation marks omitted) (citations omitted). The Illinois Supreme Court nonetheless explained that "'[a] trial court presiding over a class action—a creature of equity— would certainly possess the discretion to fashion a damage award that (1) fairly compensated claiming class members and (2) included an amount designed to deter future violations, without

destroying defendant's business.'" *Id.* at 929 (quoting *Cent. Mut. Ins. Co. v. Tracy's Treasures, Inc.,* 19 N.E.3d 1100, 1118 (Ill. App. Ct. 1st Dist. 2014)).

Plaintiffs argue that nothing in *Cothron*, which was a class action, suggests that the trial court's discretion to reduce an excessive damage award creates individual issues. Plaintiffs point instead to *Murray v. GMAC Mortg. Corp.*, in which the Seventh Circuit stated: "An award that would be unconstitutionally excessive may be reduced, but constitutional limits are best applied after a class has been certified. Then a judge may evaluate the defendant's *overall conduct* and control its *total* exposure." 434 F.3d 948, 954 (7th Cir. 2006) (emphasis added). Plaintiffs' position finds support in a recent district court case that rejected a similar argument to the one Amazon makes here. *Tapia-Rendon v. United Tape & Finishing Co.*, No. 21 C 3400, 2023 WL 5228178, at *6 (N.D. Ill. Aug. 15, 2023) ("[T]he fact that damages under the BIPA are discretionary after *Cothron* does not mean that they cannot be awarded in a common class-wide manner."), *reconsideration denied,* No. 21 C 3400, 2024 WL 406513 (N.D. Ill. Feb. 2, 2024).[4] In that case, the court found that the class was seeking statutory, not actual, damages, which would be "assessed on a common per-scan basis across the class, even if the amount differs from the $1,000 or $5,000 liquidated damages amounts provided in the BIPA." *Id.* "If it at some point [the defendant's] manageability concerns become realized, 'Rule 23(c)(1)(B) specifically recognizes the possibility of certifying not just class claims, but also class issues." *Id.* at *7 (quoting *Arreola v. Godinez*, 546 F.3d 788, 800–01 (7th Cir. 2008) (internal quotation marks omitted)).

---

[4] The Court is further unpersuaded that the factors set forth in the Seventh Circuit pattern jury instruction for awarding statutory damages for copyright infringement either apply here or show that individualized issues predominate. Additionally, nothing in *Rogers* supports Amazon's position that an inquiry into the application of affirmative defenses requires individual determinations of discretionary BIPA damages post-*Cothron*. 2023 WL 4297654, at *9.

Consequently, "the need for individual damages determinations does not, in and of itself, require denial" of class certification. *Arreola*, 546 F.3d at 801.

The cases relied upon by Amazon where individual damage calculations would overwhelm questions common to the class are distinguishable. *Comcast Corp. v. Behrend*, 569 U.S. 27, 36 (2013) (finding plaintiffs' damages model "failed to measure damages resulting from the particular antitrust injury on which petitioners' liability in this action is premised" and, without another class-wide methodology, individual damage calculations would predominate); *Eddlemon v. Bradley Univ.*, 65 F.4th 335, 340 (7th Cir. 2023) (district court erred in certifying class without considering the elements of plaintiff's claims or defendant's argument that breach of contract claim would lead to many individual questions regarding damages); *Andrews v. Chevy Chase Bank*, 545 F.3d 570 (7th Cir. 2008) (finding class certification would only give rise to hundreds or thousands of individual rescission procedures to "unwind" individual credit transactions); *Wacker Drive Exec. Suites, LLC v. Jones Lang LaSalle Americas (Illinois), LP*, No. 18 C 5492, 2022 WL 1045701, at *21 (N.D. Ill. Apr. 7, 2022) (where tenants sought damages for increased costs for union labor compared to non-union labor but failed to provide any expert estimate of labor costs, determining damages would require individual proof based on each contractor's estimate of union labor costs).

Plaintiffs further argue that the defenses of consent, failure to mitigate, estoppel, and waiver do not apply to BIPA's statutory claims, citing to authority in support of their position. Amazon does not cite any authority that would support the application of those defenses to BIPA claims. Regardless, "whether these defenses are even available on BIPA claims is a common issue, and if they are, so too is their application." *Tapia-Rendon*, 2023 WL 5228178, at *8 (cleaned up). As Amazon frames their consent defense—namely, the use of Amazon's VTO

technology is completely voluntary, and in order to access VTO, shoppers must push a "try on" button and are advised that no data used by VTO leaves their device—it is equally applicable to all class members. As for its estoppel defense, Amazon does not explain how it applies in this case and there is no indication that its application would vary across the class. *See Tapia-Rendon*, 2023 WL 5228178, at *8.

With respect to waiver and failure to mitigate, Amazon contends that the data shows that Plaintiff Colosi continued to use VTO out-of-state after joining this lawsuit with full knowledge of her allegations, creating waiver and failure to mitigate defenses. Plaintiffs points out that Amazon cites no evidence in support of that claim. Further, Amazon's corporate representative testified that its waiver and failure to mitigate defenses are "not based on any facts," and in any event, out-of-state uses of VTO fall outside the scope of this lawsuit. Given the lack of factual and legal support that these defenses even apply to this case, the Court is not persuaded that individual inquiries into whether these defenses apply, or would require individualized damages calculations, would predominate over the plainly common questions. *Messner*, 669 F.3d at 815 ("It is well established that the presence of individualized questions regarding damages does not prevent certification under Rule 23(b)(3)."); *Mullins*, 795 F.3d at 671 ("It has long been recognized that the need for individual damages determinations at [a] later stage of the litigation does not itself justify the denial of certification.").[5]

---

[5] *Hyderi v. Washington Mutual Bank, FA* is inapposite. 235 F.R.D. 390, 406 (N.D. Ill. 2006) (denying class certification for RESPA claims where class proceedings would at most settle a limited slice of the litigation and where litigation would require hundreds of follow-on proceedings to determine failure to mitigate, causation, consequential economic damages, and mental anguish).

### iii. Size of Possible Damages

Next Amazon argues that the core policy behind class actions—to provide a procedural mechanism to incentivize suits involving a large number of class members who each incurred a *de minimis* injury and who would not individually bring a suit—is not implicated here. *See, e.g.*, *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."). Amazon argues that under Plaintiffs' theory, the mean recovery for class members would exceed $60,000, with over 1,400 class members recovering over $500,000 and more than 250 class members eligible to recover over $1,000,000. And, as Amazon points out, hundreds of BIPA cases have been filed. As the argument goes, because there is a significant incentive to sue under BIPA even on an individual basis, a class is unnecessary. Amazon argues that the possibility of an excessive damage award weighs against a finding of superiority and compromises Amazon's due process rights, citing *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 416–17 (2003) (holding a punitive damages award of $145 million, where full compensatory damages are $1 million, is excessive and violates due process).

This Court is persuaded by the Seventh Circuit's reasoning in *Murray*, which found a similar argument to be an improper ground on which to deny class certification:

> Having upbraided Murray for abandoning compensatory damages and thus seeking too little, the district judge also rebuked her for seeking too much. He wrote: "If Murray and the proposed class members were to prevail at trial, GMAC would face a potential liability in the billions of dollars for purely technical violations of the FCRA . . . Rule 23 is not intended to encourage such abuses of the class action mechanism."
>
> The reason that damages can be substantial, however, does not lie in an "abuse" of Rule 23; it lies in the legislative decision to authorize awards as high as $1,000 per

person, 15 U.S.C. § 1681n(a)(1)(A), combined with GMACM's decision to obtain the credit scores of more than a million persons. . . .

The district judge sought to curtail the aggregate damages for violations he deemed trivial. Yet it is not appropriate to use procedural devices to undermine laws of which a judge disapproves. . . . Maybe suits such as this will lead Congress to amend the Fair Credit Reporting Act; maybe not. While a statute remains on the books, however, it must be enforced rather than subverted. An award that would be unconstitutionally excessive may be reduced, . . . but constitutional limits are best applied after a class has been certified. Then a judge may evaluate the defendant's overall conduct and control its total exposure. Reducing recoveries by forcing everyone to litigate independently—so that constitutional bounds are not tested, because the statute cannot be enforced by more than a handful of victims—has little to recommend it.

*Murray*, 434 F.3d at 953 (citations omitted); *see also Tapia-Rendon*, 2023 WL 5228178, at *7 (finding *Murray* forecloses the argument that the potential for an excessive judgment under BIPA violates a defendant's constitutional due process rights).

Although class actions with high potential liability unquestionably place pressure on defendants to settle, that pressure "must be balanced against the undoubted benefits of the class action that have made it an authorized procedure for employment by federal courts." *Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1299 (7th Cir. 1995). Plaintiffs contend that they have already expended substantial expert costs in the six figures to analyze Amazon's software, with fact and expert discovery then-ongoing. A class action is superior where "no rational individual plaintiff would be willing to bear the costs of [the] lawsuit." *Suchanek*, 764 F.3d at 760; *see also id*. ("In this case, resolution of the merits may require costly survey evidence and expert testimony, along the lines plaintiffs have proffered for certification purposes, to prove the allegation that the GSC packaging was likely to mislead a reasonable consumer."). Very few individuals could or would expend such costs. Indeed, Plaintiffs point out that the statutory damages available under BIPA have not been a sufficient incentive for a single member of the proposed class to sue Amazon individually. *See Barnes v. Air Line Pilots Ass'n, Int'l*, 310 F.R.D.

551, 562 (N.D. Ill. 2015) ("The relatively substantial recovery awaiting many of the management pilots, standing alone, does not defeat superiority. Indeed, 'the text of Rule 23(b)(3) does not exclude from certification cases in which individual damages run high.'" (quoting *Amchem Prods.*, 521 U.S. at 617)); *see also* 2 Newberg and Rubenstein on Class Actions § 4:70 (6th ed.) ("[A] complete lack of other litigation concerning the matter at hand supports the conclusion that a class action would be superior to individual litigation." (collecting cases)).

Further, a class action is "superior when it 'may forestall an inefficient and uneconomical flood of individual lawsuits and/or prevent inconsistent outcomes in like cases,'" which "is an especially powerful concern when . . . common issues predominate strongly." *Coleman through Bunn v. D.C.*, 306 F.R.D. 68, 87 (D.D.C. 2015) (quoting 2 Newberg and Rubenstein on Class Actions § 4:67 (5th ed.)); *see also Mejdreck v. Lockformer Co.*, No. 01 C 6107, 2002 WL 1838141, at *7 (N.D. Ill. Aug. 9, 2002) (superiority satisfied as "it would be wholly inefficient to try thousands of separate cases that would allege the same misconduct and provide the same proof of such"), *aff'd sub nom. Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910 (7th Cir. 2003). Here, common issues predominate strongly, and class proceedings will resolve liability, ensure uniformity of decision, avoid duplicative resolution of complex common issues, preserve party and judicial resources, and promote efficiency. Further, "[t]he more claimants there are, the more likely a class action is to yield substantial economies in litigation." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004). The potential class comprises over 160,000 individuals, all with virtually identical claims that will involve common proof. "It can hardly be disputed that

resolving these claims through a class action "would be more efficient than proceeding with hundreds of individual suits." *Tapia-Rendon*, 2023 WL 5228178, at *6.

Amazon relies upon several cases for the proposition that alternative methods are superior to class treatment because damages would sufficiently incentivize individual proceedings. But those cases are distinguishable because, unlike here, the efficiencies of the class action device did not outweigh the potential incentive for individual suits or alternative methods for resolving the dispute. *See Andrews*, 545 F.3d at 577 (finding individual rescission procedures to "unwind" hundreds or thousands of individual credit transactions did not promote judicial economy and efficiency); *Hamilton v. O'Connor Chevrolet, Inc.*, No. 02 C 1897, 2006 WL 1697171, at *12 (N.D. Ill. June 12, 2006) (finding class action device not superior due to the availability of an effective alternative plus the problems inherent in conducting hundreds or thousands of follow-on procedures regarding liability, actual damages, and emotional damages); *Glover v. Standard Fed. Bank*, 283 F.3d 953, 965 (8th Cir. 2002) (finding a loan-specific inquiry into services provided was required to determine liability and amount of damages warranted under RESPA); *Van v. Ford Motor Co.*, 332 F.R.D. 249, 290 (N.D. Ill. 2019) (finding individual Title VII lawsuits with significant money damages and attorneys' fees to be a viable option for hostile work environment claims, whereas liability could not be established on a class-wide basis and the plaintiffs' proposed litigation plan would necessitate hundreds of separate hearings); *Hyderi, supra* n.5.[6]

---

[6] *AT&T Mobility LLC v. Concepcion* is unpersuasive in this case. 563 U.S. 333 (2011). There the Supreme Court noted in dicta that the district court had concluded that claimants were better off pursuing claims pursuant to their arbitration agreement with AT&T, which provided a minimum of $7,500 and twice their attorney's fees if they obtained an arbitration award greater than AT&T's last settlement offer, than they would have been as participants in a class action, which could take months, if not years, and may merely yield an opportunity to submit a claim for recover of a small percentage of a few dollars. *Id*. at 351.

Accordingly, the Court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

## CONCLUSION

For all of these reasons, Plaintiff's Motion for Class Certification [169][174] is granted. The Court certifies the following class under Rule 23(b): all individuals who used a virtual try-on feature on Amazon's mobile website or app while in Illinois on or after September 7, 2016. Excluded from the Class are: (1) any person who used such a virtual try-on feature only in model mode or for hair color; (2) any judge presiding over this action; (3) all members of any such judge's staff and immediate family; (4) Defendants; (5) any entities in which any Defendant has a controlling interest; (6) Defendant's employees, owners, officers, and directors. The Court appoints Keith James Keogh, Theodore Herbert Kuyper, and Timonthy J. Sostrin, of Keogh Law, Ltd. as class counsel in this case.

Defendants filed an unopposed motion to seal [196] wherein they move the Court to maintain under seal the unredacted version of Plaintiffs' motion for class certification [174] and Exhibit 4 thereto. Defendants' motion [196] is granted for good cause shown for the reasons set forth in Defendants' motion. The unredacted version of Plaintiffs' motion for class certification [174], and Exhibit 4 thereto, shall remain under seal. The clerk is directed to unseal Exhibit 8 [174-2].

 Defendants filed an unopposed motion to seal [213] wherein they move the Court to maintain under seal (i) the unredacted version of their memorandum of law in response to Plaintiffs' motion for class certification [212] and (ii) certain exhibits thereto containing trade

secrets, confidential business information, and Plaintiffs' personally identifiable information. Defendants' motion [213] is granted for good cause shown for the reasons set forth in Defendants' motion. The unredacted versions of Defendants' memorandum of law and Exhibits A, B, D, E, G, H, and I thereto shall remain under seal. The clerk is directed to unseal Exhibits J [212-10], K [212-11], and L [212-12].

Plaintiffs' unopposed motion to seal [257] is denied without prejudice. Under Local Rule 26.2(b), "[t]he court may for good cause shown enter an order directing that one or more documents be filed under seal." Plaintiffs make no such showing other than to say that the exhibits are designated as "Confidential" pursuant to the Agreed Confidentiality Order entered on February 25, 2022 [28]. But, under the Agreed Confidentiality Order, the mere designation of a document as "Confidential" does not alone amount to the required "good cause" or allow for that document to be filed under seal. [28, Par. 7]. "The determination of good cause [to seal materials] cannot be elided by allowing the parties to seal whatever they want." *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999). A party hoping to file materials in secret must justify the claim of secrecy and "analyze the applicable legal criteria or contend that any document... may... legitimately... be kept from public inspection despite its importance to the resolution of the litigation." *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 546 (7th Cir. 2002); *see also Bierk v. Tango Mobile, LLC*, No. 19 C 5167, 2021 WL 308834 (N.D. Ill. Jan. 29, 2021). Without any attempt to show "good cause" in the motion to seal, it cannot be granted as filed. And as filed, the motion to seal is denied. But the Court will allow the documents to remain provisionally sealed until 04/12/2024, to allow the Plaintiffs or Defendants to file a properly supported motion to seal if they so choose.

Defendants' motion for leave to file sur-reply [262] is granted. Plaintiffs' motion for leave to file reply to Defendants' sur-reply [268] is granted.

This case is set for status hearing on May 9, 2024 at 9:30 a.m. for the purpose of setting a schedule for further proceedings. The parties are directed to confer regarding a schedule and are to submit a joint status report with a proposal (or competing proposals if they cannot agree) by May 6, 2024.

**SO ORDERED.**                                        **ENTERED: March 30, 2024**

                                                        _____
                                                        **HON. JORGE ALONSO**
                                                        **United States District Judge**